UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE CONNER

06 CV 5473

—————————————————— x

TODD W. KIBLER, Individually and on
Behalf of All Others Similarly Situated,

                          Plaintiff,

    vs.

PAR PHARMACEUTICAL COMPANIES
INC., SCOTT TARRIFF and DENNIS J.
O'CONNOR,

                      Defendants.

—————————————————— x

Civil Action No.

COMPLAINT FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS

FILED
U.S. DISTRICT COURT
2006 JUL 19  PM 3:43
S.D. OF N.Y.

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Par Pharmaceutical Companies Inc. ("Par" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of purchasers of the securities of Par between April 29, 2004, and July 5, 2006, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. §1391(b), as and many of the acts and practices complained of herein occurred in substantial part in this District.

5.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Todd W. Kibler, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Par at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant Par is a Delaware corporation which maintains executive offices in this District. Par engages in the manufacture and distribution of generic and branded drugs in the United States.

8.      (a)      Defendant Scott Tarriff ("Tarriff") was, at all relevant times, President and Chief Executive Officer of Par.

        (b)      Defendant Dennis J. O'Connor ("O'Connor") was, at all relevant times, Par's Vice President and Chief Financial Officer.

        (c)      Defendants Tarriff and O'Connor are collectively referred to herein as the "Individual Defendants."

9.      Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Par, by virtue

- 2 -

of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the New York Stock Exchange ("NYSE"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market prices of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Par, each of the Individual

Defendants had access to the adverse undisclosed information about Par's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Par and its business issued or adopted by the Company materially false and misleading.

13.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each of the Individual Defendants was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.    Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Par common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Par's business, operations, management and the intrinsic value of Par common stock; and (ii) caused Plaintiff and other members of the Class to purchase Par common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Par during the Class Period and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times,

members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Par common shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Par or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18.    Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

19.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Par; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

20.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21.    Defendant Par engages in the manufacture and distribution of generic and branded drugs in the United States.

22.    On April 29, 2004, Par issued a press release announcing its financial results for the first quarter of 2004, the period ending April 4, 2004. For the quarter, the Company reported net income of $28.5 million or $0.80 per share. Defendant Tarriff commented on the results stating in pertinent part as follows:

> In 2004, we have taken steps to broaden, diversify and bring more visibility to our product portfolio . . . Through our acquisition of Kali, we will now file substantially more ANDAs and launch many more new products over the next few years than would have otherwise been possible. We will file our first NDA in the next few months and have already secured another potential NDA submission for 2005. We remain committed to making 2004 a very successful year and I can say with confidence that our Company has never been stronger.

23.    On May 14, 2004, Par filed its Form 10-Q for the quarter ended April 4, 2004, with the SEC which was signed by the Individual Defendants and confirmed the previously announced financial results (the "First Quarter 2004 10-Q"). The First Quarter 2004 10-Q represented that the financial statements contained therein included "all adjustments" necessary for a "fair presentation" of the Company's financial position stating in pertinent part as follows:

The accompanying consolidated financial statements at April 4, 2004 and for the three-month periods ended April 4, 2004 and March 30, 2003 are unaudited; in the opinion of the Company's management, however, such statements include all adjustments (consisting only of normal recurring accruals) necessary to present fairly the information presented therein. The consolidated balance sheet at December 31, 2003 was derived from the Company's audited consolidated financial statements at such date.

The First Quarter 2004 10-Q also included Sarbanes-Oxley certifications signed by the Individual Defendants. In their respective certifications, the Individual Defendants represented, among other things, that "based on my knowledge this report does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made . . . not misleading . . . ."

24.    On July 28, 2004, Par issued a press release announcing its financial results for the second quarter of 2004, the period ending July 4, 2004. For the quarter, the Company reported net income of $29 million or $0.85 per share. Defendant Tarriff commented on the results stating in pertinent part as follows:

Par's second quarter benefited from the strong performance of our base business and new product introductions . . . Importantly, sales of megestrol acetate oral suspension stabilized in the quarter and we expect megestrol to continue to be a significant contributor to our future performance. As we look forward to building a new Megace® franchise in 2005, it is encouraging to see that new prescriptions for the category reached a two-year high in July. In addition to the recently submitted NDA for our advanced formulation of megestrol, Par has 38 regulatory filings currently awaiting FDA approval. This represents a record total for Par and includes 14 ANDAs and 1 NDA already submitted this year by Par, its partners, and Kali. With the acquisition of Kali complete, our company has simply never been stronger.

25.    On August 13, 2004, Par filed its Form 10-Q for the quarter ended June 30, 2004, with the SEC which was signed by the Individual Defendants and confirmed the previously announced financial results (the "Second Quarter 2004 10-Q"). The Second Quarter 2004 10-Q represented that the financial statements contained therein included "all adjustments" necessary for a "fair presentation" of the Company's financial position stating in pertinent part as follows:

The accompanying consolidated financial statements at July 4, 2004 and for the six-month and three-month periods ended July 4, 2004 and June 29, 2003 are

- 7 -

unaudited; in the opinion of the Company's management, however, such statements include all adjustments (consisting only of normal recurring accruals) necessary to present fairly the information presented therein. The consolidated balance sheet at December 31, 2003 was derived from the Company's audited consolidated financial statements at such date.

The Second Quarter 2004 10-Q also included Sarbanes-Oxley certifications signed by the Individual Defendants. In their respective certifications, the Individual Defendants represented, among other things, that "based on my knowledge this report does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made . . . not misleading . . . ."

26.     On October 24, 2004, Par issued a press release announcing its financial results for the third quarter of 2004, the period ending October 3, 2004. For the quarter, the Company reported net income of $16.2 million or $0.48 per share. Defendant Tarriff commented on the results stating in pertinent part as follows:

> Par's comparative third-quarter results reflect the impact of last year's launch of paroxetine, and this year's significant increase in R&D . . . However, our base business growth was impressive and our megestrol franchise remained stable. Our increased investment in R&D demonstrates our commitment to building a company that can sustain growth for years to come. Par expects to introduce as many as two dozen new products between now and the end of 2005. Among these, we are especially excited about our new Megace® product, which will potentially represent Par's first entrant into the branded pharmaceutical arena.

27.     On November 12, 2004, Par filed its Form 10-Q for the quarter ended October 3, 2004, with the SEC which was signed by the Individual Defendants and confirmed the previously announced financial results (the "Third Quarter 2004 10-Q"). The Third Quarter 2004 10-Q represented that the financial statements contained therein included "all adjustments" necessary for a "fair presentation" of the Company's financial position stating in pertinent part as follows:

> The accompanying consolidated financial statements at October 3, 2004 and for the nine-month and three-month periods ended October 3, 2004 and September 28, 2003, respectively, are unaudited; in the opinion of the Company's management, however, such statements include all adjustments (consisting of only normal recurring accruals) necessary to present fairly the information presented therein. The

consolidated balance sheet data at December 31, 2003 was derived from the Company's audited consolidated financial statements at such date.

The Third Quarter 2004 10-Q also included Sarbanes-Oxley certifications signed by the Individual Defendants. In their respective certifications, the Individual Defendants represented, among other things, that "based on my knowledge this report does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made . . . not misleading . . . ."

28.     On February 24, 2005, Par issued a press release announcing its financial results for the fourth quarter of 2004 and fiscal year 2004, the period ending December 31, 2004. For the quarter, the Company reported net income of $4.3 million or $0.12 per share. For the year, Par reported net income of $78.8 million or $2.26 per share. Defendant Tarriff commented on the results stating in pertinent part as follows:

> Although 2004 was a challenging year for Par, our company has never been stronger or better positioned for sustainable growth . . .  In 2004, Par more than tripled the scale of its research and development (R&D) organization through the acquisition of Kali Laboratories. Between Par and its partners, we filed 32 Abbreviated New Drug Applications (ANDAs) and now have more than 50 products awaiting regulatory approval - - a record for our company. Importantly, Par also filed its first New Drug Application (NDA). We look forward to introducing the advanced formulation of Megace®, our first branded pharmaceutical product, as soon as June or July. In 2005, Par expects to introduce 20 or more new products. Assuming timely regulatory approvals, we are comfortable with the current consensus earnings estimate for 2005.

29.     On March 16, 2005, Par filed its Form 10-K for fiscal year 2004 with the SEC which was signed by the Individual Defendants, among others, and which confirmed the previously announced financial results.

30.     On April 28, 2005, Par issued a press release announcing its financial results for the first quarter of 2005, the period ending April 3, 2005. For the quarter, the Company reported net income of $1.9 million or $0.06 per share. Defendant Tarriff commented on the results stating in pertinent part as follows:

Par's first-quarter performance reflects, in part, the considerable investment necessary to build a new branded specialty pharmaceutical business . . . The quarter was also impacted by regulatory delays, and continued erosion of older generic products in advance of our transition to new ones. Fortunately, that transition began last week with the introduction of our generic version of Ultracet®. We can now look forward to acceleration in earnings beginning in the second quarter.

31.    On May 13, 2005, Par filed its Form 10-Q for the quarter ended March 31, 2005, with

the SEC which was signed by the Individual Defendants and confirmed the previously announced

financial results (the "First Quarter 2005 10-Q"). The First Quarter 2005 10-Q represented that the

financial statements contained therein included "all adjustments" necessary for a "fair presentation"

of the Company's financial position stating in pertinent part as follows:

The accompanying consolidated financial statements at April 3, 2005 and for the three-month periods ended April 3, 2005 and April 4, 2004 are unaudited; in the opinion of the Company's management, however, such statements include all adjustments (consisting only of normal recurring accruals) necessary to present fairly the information presented therein. The consolidated balance sheet at December 31, 2004 was derived from the Company's audited consolidated financial statements at such date.

The First Quarter 2005 10-Q also included Sarbanes-Oxley certifications signed by the Individual

Defendants. In their respective certifications, the Individual Defendants represented, among other

things, that "based on my knowledge this report does not contain any untrue statement of material

fact or omit to state a material fact necessary to make the statements made . . . not misleading . . . ."

32.    On July 28, 2005, Par issued a press release announcing its financial results for

second quarter of 2005, the period ending July 3, 2005. For the quarter, the Company reported net

income of $4.6 million or $0.13 per share. Defendant Tarriff commented on the results stating in

pertinent part as follows:

In the second quarter, Par invested almost $15 million, and more than $26 million through the first six months, to build a new branded pharmaceutical business . . . And while the quarter's results reflect this substantial investment, the improved performance of our generic business should not be overlooked. Specifically, the April launch of our generic version of Ultracet® has exceeded most expectations. Following this month's approval and introduction of Megace® ES, Par's first branded

- 10 -

pharmaceutical product, we believe that the dilutive impact of building our new branded business is now behind us.

33.    On August 12, 2005, Par filed its Form 10-Q for the quarter ended June 30, 2005, with the SEC which was signed by the Individual Defendants and confirmed the previously announced financial results (the "Second Quarter 2005 10-Q").  The Second Quarter 200510-Q represented that the financial statements contained therein included "all adjustments" necessary for a "fair presentation" of the Company's financial position stating in pertinent part as follows:

> The accompanying consolidated financial statements at July 3, 2005 and for the six-month and three-month periods ended July 3, 2005 and July 4, 2004 are unaudited; in the opinion of the Company's management, however, such statements include all adjustments necessary to present fairly the information presented therein. The consolidated balance sheet at December 31, 2004 was derived from the Company's audited consolidated financial statements at such date.

The Second Quarter 2005 10-Q also included Sarbanes-Oxley certifications signed by the Individual Defendants.  In their respective certifications, the Individual Defendants represented, among other things, that "based on my knowledge this report does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made . . . not misleading . . . ."

34.    On October 27, 2005, Par issued a press release announcing its financial results for third quarter of 2005, the period ending October 2, 2005.  For the quarter, the Company reported net income of $10.0 million or $0.29 per share.  Defendant Tarriff commented on the results stating in pertinent part as follows:

> The third quarter benefited from the introduction of Megace ES and an improving gross margin . . . Contributing to this improvement were new, internally-developed products such as Megace ES and Par's generic version of Ultracet®. Par's financial performance, year-to-date, reflects the considerable investment necessary to build a branded pharmaceutical business. However, with the successful launch of Megace ES now underway, Par has passed an important milestone. We believe that the Megace ES launch will ultimately be viewed as the transforming event that established Par as a successful specialty pharmaceutical company.

35.    On November 15, 2005, Par filed its Form 10-Q for the quarter ended October 2, 2005, with the SEC which was signed by the Individual Defendants and confirmed the previously announced financial results (the "Third Quarter 2005 10-Q").   The Third Quarter 2005 10-Q represented that the financial statements contained therein included "all adjustments" necessary for a "fair presentation" of the Company's financial position stating in pertinent part as follows:

> The accompanying consolidated financial statements at October 2, 2005 and for the nine month and three month periods ended October 2, 2005 and October 3, 2004 are unaudited; in the opinion of the Company's management, such statements include all adjustments necessary to present fairly the information presented therein. The consolidated balance sheet at December 31, 2004 was derived from the Company's audited consolidated financial statements at such date.

The Third Quarter 2005 10-Q also included Sarbanes-Oxley certifications signed by the Individual Defendants.  In their respective certifications, the Individual Defendants represented, among other things, that "based on my knowledge this report does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made . . . not misleading . . . ."

36.    On February 26, 2006, Par issued a press release announcing its financial results for fourth quarter of 2005 and fiscal year 2005, the periods ending December 31, 2005.  For the year, Par reported net income of $12.6 million or $0.36 per share.

37.    On May 1, 2006, Par issued a press release announcing its financial results for the first quarter of 2006, the period ending April 2, 2006.  For the quarter, the Company reported net income of $8.4 million or $0.24 per share.

38.    On May 12, 2006, Par filed its Form 10-Q for the quarter ended April 2, 2006, with the SEC which was signed by the Individual Defendants and confirmed the previously announced financial results (the "First Quarter 2006 10-Q").  The First Quarter 2006 10-Q represented that the financial statements contained therein included "all adjustments" necessary for a "fair presentation" of the Company's financial position stating in pertinent part as follows:

The accompanying consolidated financial statements at April 2, 2006 and for the three month periods ended April 2, 2006 and April 3, 2005 are unaudited; in the opinion of the Company's management, however, such statements include all adjustments necessary to present fairly the information presented therein. The consolidated balance sheet at December 31, 2005 was derived from the Company's audited consolidated financial statements at such date.

The First Quarter 2006 10-Q also included Sarbanes-Oxley certifications signed by the Individual Defendants. In their respective certifications, the Individual Defendants represented, among other things, that "based on my knowledge this report does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made . . . not misleading . . . ."

39.    The statements referenced above in ¶¶22-38 were each materially false and misleading when made because they failed to disclose and misrepresented the following adverse facts:

(a)    that Par was materially overstating its financial performance by failing to properly reserve for customer credits and uncollectible accounts. During the Class Period, Par overstated its income by at least $55 million;

(b)    that Par was failing to timely write-down the value of impaired inventory. During the Class Period, Par overstated the worth of its inventory by at least $15 million; and

(c)    based on the foregoing, Par's Class Period financial statements were materially false and misleading and not prepared in accordance with Generally Accepted Accounting Principles ("GAAP").

40.    On July 5, 2006, Par admitted that its previously issued financial results and financial statements materially overstated the Company's financial performance and that the Company's financial statements were not prepared in accordance with GAAP. On that date, Par issued a press release announcing that it would be restating its financial statements for fiscal years 2004, 2005 and the first quarter of 2006 to correct for "an understatement of accounts receivable reserves which

- 13 -

resulted primarily from delays in recognizing customer credits and uncollectible customer deductions." The Company reported that the effect of the restatement over reported periods will be $55 million, that the Company would also write down $15 million in inventory and that its prior financial statements "should not be relied upon."

41.     In response to the announcement of the restatement, the price of Par stock dropped from $18.25 per share to $13.47 per share on extremely heavy trading volume.

42.     The market for Par's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Par's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Par securities relying upon the integrity of the market price of Par's securities and market information relating to Par, and have been damaged thereby.

43.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Par's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

44.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Par's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of

Par and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market the inflation in the price of Par stock was removed and the price of Par stock declined dramatically causing loss to Plaintiff and the other members of the Class.

## ADDITIONAL SCIENTER ALLEGATIONS

45.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Par, their control over, and/or receipt and/or modification of Par's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Par, participated in the fraudulent scheme alleged herein.

### Applicability Of Presumption Of Reliance: Fraud On The Market Doctrine

46.     At all relevant times, the market for Par's common stock was an efficient market for the following reasons, among others:

(a)     Par's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

- 15 -

(b)     As a regulated issuer, Par filed periodic public reports with the SEC and the NYSE;

(c)     Par regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Par was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

47.     As a result of the foregoing, the market for Par's common stock promptly digested current information regarding Par from all publicly-available sources and reflected such information in Par's stock price.  Under these circumstances, all purchasers of Par's common stock during the Class Period suffered similar injury through their purchase of Par's common stock at artificially inflated prices and a presumption of reliance applies.

## LOSS CAUSATION/ECONOMIC LOSS

48.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market, and a course of conduct that artificially inflated Par's stock price and operated as a fraud or deceit on Class Period purchasers of Par's securities by misrepresenting the Company's expected financial results.  When Defendants' prior misrepresentations and fraudulent conduct came to be revealed and was apparent to investors, shares of Par declined precipitously - evidence that the prior artificial inflation in the price of Par's shares was eradicated.  As a result of their purchases of Par's securities during the Class Period, plaintiff and other members of the Class suffered economic losses, *i.e.,* damages under the federal securities laws.

- 16 -

## NO SAFE HARBOR

49.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.   Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Par who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of
### the Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

50.    Plaintiff incorporates ¶¶1-49 by reference.

51.    During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

52.    Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)    Employed devices, schemes, and artifices to defraud;

(b)    Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Par publicly traded securities during the Class Period.

53.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Par securities. Plaintiff and the Class would not have purchased Par securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

54.    As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Par securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

55.    Plaintiff incorporates ¶¶1-54 by reference.

56.    The Individual Defendants acted as controlling persons of Par within the meaning of Section 20(a) of the Exchange Act. By reason of their positions as officers and/or directors of Par, and their ownership of Par stock, the Individual Defendants had the power and authority to cause Par to engage in the wrongful conduct complained of herein. Par controlled each of the Individual Defendants and all of its employees. By reason of such conduct, the Individual Defendants and Par are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

- 18 -

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: July 19, 2006                          LERACH COUGHLIN STOIA GELLER RUDMAN
                                                          & ROBBINS LLP
                                                          SAMUEL H. RUDMAN (SR-7957)
                                                          DAVID A. ROSENFELD (DR-7564)


                                                          _____
                                                          DAVID A. ROSENFELD

                                                          58 South Service Road, Suite 200
                                                          Melville, NY 11747
                                                          Telephone: 631/367-7100
                                                          631/367-1173 (fax)

                                                          ADEMI & O'REILLY, LLP
                                                          GURI ADEMI
                                                          3620 East Layton Avenue
                                                          Cudahy, WI 53110
                                                          Telephone: 414/482-8000
                                                          414/482-8001 (fax)

                                                          Attorneys for Plaintiff

- 19 -

## PLAINTIFF'S CERTIFICATE

I, Todd W. Kibler ("Plaintiff"), declare, as to the claims asserted under the Federal Securities laws, that:

1.    Plaintiff has reviewed the complaint against Pharmaceutical Companies, Inc., and certain other defendants, and authorizes its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of a class, including acting as a Lead Plaintiff and providing testimony at deposition and trial, if necessary.

4.    Plaintiff represents and warrants that he is fully authorized to enter into and execute this certification.

5.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as approved by the court.

6.    In addition, Plaintiff has made no transaction(s) during the Class Period in the securities of Pharmaceutical Companies, Inc., except those set forth below (attach additional sheets if necessary):

**Purchases**

| Date(s) | Number of Shares | Price |
|---|---|---|
|  |  |  |
|  |  |  |
| See Attachment |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**Sales**

| Date(s) | Number of Shares | Price |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

7.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except if detailed as follows: _____

I declare under penalty of perjury, under the laws of the United States, this 15th day of July, 2006 that the information above is accurate.

_Todd W. Kibler_
_____
Todd W. Kibler

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 07/14/2005 | 400 | $30.41 |
| 07/28/2005 | 300 | $25.21 |
| 02/28/2006 | 100 | $29.75 |
| 02/28/2006 | 100 | $30.05 |
| 02/28/2006 | 200 | $29.95 |
| 02/28/2006 | 200 | $30.40 |
| 03/06/2006 | 200 | $28.58 |
| 03/21/2006 | 700 | $27.81 |
| 04/21/2006 | 800 | $25.89 |
| 06/23/2006 | 2,800 | $19.31 |
| 06/26/2006 | 1,000 | $19.30 |

**Sales**

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 01/31/2005 | 105 | $38.07 |
| 05/10/2006 | 600 | $23.14 |

*Opening position of 2,500 shares.